UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| NAOMI K. BARTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:17-cv-00003-AGF |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Naomi K. Barton was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on September 4, 1969, protectively filed her application for benefits on April 18, 2014, alleging disability beginning November 6, 2013, due to rheumatoid arthritis ("RA"), fibromyalgia, depression, hypertensive cardiovascular disease, and plantar fasciitis. On May 27, 2014, Plaintiff's application was denied at the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

initial administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on November 23, 2015, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. By decision dated December 15, 2015, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined by the Commissioner's regulations, except that Plaintiff was further limited as follows:

> [S]he can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous work environments. She can occasionally stoop, kneel, crouch, or crawl. She can occasionally reach overhead with either or both upper extremities. She can frequently perform tasks that require fingering or handling. She requires a sit/stand option allowing her to shift position hourly while remaining on task. She could tolerate occasional exposure to extreme cold, heat, or humidity. She is limited to understanding, remembering, and carrying out simple, routine tasks and making simple work-related decisions. She would not be able to perform production rate pace tasks but would meet all end-of-day goals. She would have only brief, incidental contact with co-workers, for example, no tandem tasks requiring cooperation with co-workers to complete the tasks. She would have frequent contact with supervisors.

Tr. 18.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (folding machine operator and routing clerk), as well as a sedentary unskilled job listed in the DOT (document preparer), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled

2

under the Social Security Act. Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration, which was denied on November 15, 2016. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ erred in formulating her RFC by failing to properly evaluate the medical opinion evidence provided by Plaintiff's treating physicians, and by failing to properly incorporate all aspects of the opinion of non-examining physician, Stuart Glassman, M.D,[2] a physical medicine and rehabilitation specialist, despite giving that opinion "great weight." Plaintiff asks that the ALJ's decision be reversed and that she be awarded benefits, or alternatively, that the case be remanded for further development of the record.

**Agency Records, Medical Records, and Evidentiary Hearing**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 17-1), which facts have been admitted by Defendant, with only one minor, non-material clarification (ECF No. 21-1). This statement provides a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

**ALJ's Decision Under Review (Tr. 8-31)**

The ALJ found that Plaintiff had the following severe impairments: obesity; RA,

---

[2] Dr. Glassman's opinion was not provided in connection with Plaintiff's application for social security benefits, but rather, in connection with Plaintiff's claim for benefits from the Hartford Life Insurance Companies.

which Plaintiff alleged was exacerbated by changes in weather and other factors; degenerative disc disease at all levels of the spine; osteoarthritis in the bilateral feet; affective disorder; and anxiety, but that none of these impairments, alone or in combination, met or medically equaled the severity of the impairments listed in the Commissioner's regulations.

The ALJ noted that Plaintiff also alleged fibromyalgia, but the ALJ concluded that the record only contained sporadic physical examination findings consistent with fibromyalgia, and the record did not contain a diagnosis of fibromyalgia by an acceptable medical source. Therefore, the ALJ found that Plaintiff's fibromyalgia was not a medically determinable impairment. Nevertheless, the ALJ noted that Plaintiff's treating primary care physician, Nancy Mabe, M.D., released Plaintiff to work with a limitation of no prolonged standing, after a two-week work-restriction due to Plaintiff's allegations of pain associated with fibromyalgia. The ALJ concluded that, although fibromyalgia was a non-medically determinable impairment in this case, the limitation of no prolonged standing was consistent with Plaintiff's severe limitations. Accordingly, the ALJ included a limitation in the RFC that Plaintiff required a sit/stand option allowing her to shift position hourly.[3]

---

[3] The ALJ also concluded that, although Plaintiff had a history of treatment for hypertension and plantar fasciitis, these impairments were non-severe because the medical record lacked objective findings to support that they caused Plaintiff to experience significant limitations. However, the ALJ stated that she considered the impact of these and other non-severe impairments in formulating Plaintiff's RFC. Plaintiff does not challenge these findings on judicial review.

The ALJ concluded that Plaintiff's medically-determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.

The ALJ reviewed the treatment records of Plaintiff's RA specialist, Pierre Moeser, M.D., who treated Plaintiff three to four times each year during the relevant period. Dr. Moeser's treatment records indicated that Plaintiff's RA was only mild to moderate in degree during this period, with physical examination findings typically unremarkable. Although Dr. Moeser indicated that Plaintiff's condition temporarily worsened in October 2015, when physical examination revealed pain and limited range of motion, as well as some swelling and crepitus, her condition was generally reported as "stable" with symptoms occurring only "rarely" during the relevant period.

The ALJ also reviewed the treatment records of Plaintiff's pain specialist, James Sturm, D.O., who treated Plaintiff from October 2013 to late 2015. Dr. Sturm's physical examinations of Plaintiff during this period reflected "waxing and waning" symptoms, including cervical pain with compressive loading and reduced range of motion in Plaintiff's hips. Plaintiff had only trace reflexes in her bilateral Achilles, but her overall strength and deep tendon reflexes were unremarkable. The ALJ noted that, overall, Dr. Sturm's longitudinal treatment notes supported that Plaintiff's RA was stable during this period, with Plaintiff suffering only a "slight" flare up of her symptoms in June 2014.

The ALJ noted that Dr. Sturm opined on multiple occasions, from early 2014

5

through March 2015, that Plaintiff was "totally and permanently disabled." The ALJ gave little weight to these opinions on the basis that they were conclusory, lacked a function-by-function analysis, and were inconsistent with Dr. Sturm's own treatment notes and physical examination findings. The ALJ also gave little weight to Dr. Sturm's opinion that Plaintiff was not capable of performing a range of sedentary work, and would miss work three or more times each month due to exacerbation of her symptoms. The ALJ concluded that Dr. Sturm's opinion was inconsistent with his own longitudinal physical examination findings, as well as the findings of Dr. Moeser, and instead appeared to be based on Plaintiff's subjective complaints. However, the ALJ gave partial weight to Dr. Sturm's opinion that Plaintiff was limited to no above-the-shoulder reaching bilaterally. The ALJ concluded that the medical record lacked objective physical examination findings to support such a significant limitation. Nevertheless, the ALJ accounted for the impairment to some degree, by limiting Plaintiff to being able to perform this function only occasionally.

Next, the ALJ reviewed the July 2014 Peer Review report completed by Dr. Glassman, provided in connection with Plaintiff's Hartford Life Insurance claim. The ALJ noted that Dr. Glassman was not a treating source but that he "documented that he took great care in reviewing [Plaintiff's] longitudinal medical record and using the available evidence to support his ultimate findings." Dr. Glassman opined that Plaintiff was generally capable of performing sedentary work, and that the medical record indicated she would likely be capable of performing up to light work. The ALJ concluded that Dr.

6

Glassman's opinion was consistent with the longitudinal medical evidence.

The ALJ also reviewed the November 2015 medical source statement provided by Dr. Moeser. Dr. Moeser described a host of limitations indicating that Plaintiff could not lift or carry more than five pounds, that she could only sit for two hours and stand or walk for two hours during an eight-hour period, and that she could not perform even low stress jobs due to the recent death of her daughter to suicide. The ALJ gave little weight to Dr. Moeser's opinion because it was not supported by objective findings in the record, was instead based primarily on Plaintiff's subjective complaints, and "appear[ed] to be a sympathetic response to the claimant's understandable exacerbation of symptoms due to the death of her daughter." Tr. 21.

However, based on Plaintiff's history of RA, as well as back and foot pain, the ALJ limited Plaintiff to light work. In addition, due to Plaintiff's pain and limited range of motion in her hips, the ALJ required a sit/stand option allowing Plaintiff to shift positions hourly while remaining on task. The ALJ also included postural, handling, and reaching limitations due to Plaintiff's upper extremity pain. Finally, the ALJ included environmental limitations due to Plaintiff's RA and hazard restrictions due to pain-related agility and concentration deficits.

With respect to Plaintiff's mental impairments, the ALJ considered the "Attending Physician's Statement of Disability" completed by nurse practitioner, Chelsea Everly, and provided in connection with Plaintiff's Hartford Life Insurance claim. Everly had provided treatment to Plaintiff from 2013 through 2015, in her capacity as a nurse

practitioner working in the office of psychiatrist, Gregory Mattingly, M.D.[4] This opinion was completed and signed by Everly on April 15, 2014, and signed by Dr. Mattingly on July 1, 2014. The opinion indicated that Plaintiff was, at the time of the opinion, unable to work until her medications were properly adjusted, and that the medication was adjusted on April 15, 2014. In March 2015, Dr. Mattingly completed an additional Statement of Disability for Hartford Life Insurance, opining that Plaintiff had improved with medication but was still unable to function in 11 of 12 areas indicated on the form, including dealing with people and making judgments and decisions, and that Plaintiff was "completely and totally disabled in regards to working ability." TR. 568. The ALJ gave these opinions little weight. The ALJ reasoned that the treatment notes from Dr. Mattingly did not contain findings to support his medical source statement, but instead simply documented Plaintiff's subjective reports. According to the ALJ, there were virtually no mental status examination findings to support a finding that Plaintiff was unable to return to work.

The ALJ also considered the July 2014 Peer Review report completed by non-examining psychiatrist, Kathleen Seibel, M.D., in connection with Plaintiff's Hartford Life Insurance claim. Dr. Seibel found that Plaintiff's medical record did not support any functional limitations due to a psychiatric impairment. The ALJ gave little weight to this opinion because it was inconsistent with Plaintiff's ongoing treatment in Dr. Mattingly's office, as well as the recent loss of Plaintiff's daughter to suicide, which supported that

---

[4] The notes from Dr. Mattingly's practice were completed by Everly only (Tr. 575-84), and it is unclear to what extent, if any, Dr. Mattingly ever treated Plaintiff.

Plaintiff has struggled with significant stress and mental symptoms.

Finally, the ALJ considered the September 2014 opinion provided by a consulting examining psychologist, Lisa Schriewer Clervi.[5] Dr. Clervi's mental status examination revealed that Plaintiff had a flat affect and "mild" thought blocking. Plaintiff presented as anxious, agitated, and withdrawn, but she had good memory and concentration and denied suicidal ideation. Dr. Clervi diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder, and opined that Plaintiff was generally unable to perform any work. The ALJ gave little weight to Dr. Clervi's opinion, stating that it was a legal conclusion and lacked any function-by-function analysis of Plaintiff's mental limitation. The ALJ also noted that Plaintiff testified at the hearing that the primary impairment hampering her ability to work was the physical impairment of RA.

Nevertheless, the ALJ included specific limitations in the RFC to account for Plaintiff's moderate mental impairments, including that Plaintiff could only perform simple tasks, and was limited in terms of her production rate and interactions with coworkers.

## **DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

---

[5] The record indicates that Lisa Schriewer Clervi is a licensed psychologist, but it does not indicate her doctoral status. As the ALJ referred to her as "Dr. Clervi," the Court will do the same.

substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**RFC Finding and Weight of Medical Opinions**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* Here, the Court concludes that the ALJ's RFC determination is supported by sufficient medical evidence.

Under the applicable social security regulations,[6] the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "[t]he Commissioner may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.*

The ALJ did not entirely disregard the opinions of Plaintiff's treating physicians, but she provided good reasons for discounting the opinions. These reasons included that the opinions were conclusory, lacked function-by-function assessments, and were largely inconsistent with the providers' own treatment records and other substantial evidence in the record, including the consistent treatment notes revealing normal gait, sensation, motor and extremity strength, and balance. *See, e.g.*, *Fentress v. Berryhill*, 854 F.3d 1016, 1020

---

[6] For claims filed before March 27, 2017, the regulations provide that if "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Social Security Administration] will give it controlling weight," and further provide that the Administration "will give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527.

For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c.

(8th Cir. 2017) ("A physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight."); *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding that substantial medical evidence supported the ALJ's conclusion that a claimant diagnosed with fibromyalgia was capable of light work where the record included treatment notes that the claimant had normal muscle strength). The ALJ was responsible for weighing the conflicting evidence, and the Court cannot say that the ALJ's decision fell outside the available "zone of choice."

**<u>Not Incorporating All of Dr. Glassman's Opinion</u>**

Plaintiff's primary argument with respect to Dr. Glassman's opinion is that Dr. Glassman "emphasized sedentary work restrictions throughout his report," such as lifting 10 pounds occasionally and five pounds frequently. ECF No. 17 at 9. However, Dr. Glassman clearly stated that Plaintiff could perform "*at least* sedentary work lifting 10 pounds occasionally and 5 pounds frequently," and that Plaintiff "had enough strength throughout the records for at least light duty work," which "would be 20 pounds lifting maximally and 10 pounds frequently." Tr. 544-45 (emphasis added). Contrary to Plaintiff's assertion that Dr. Glassman did not understand the difference between light work and sedentary work, Dr. Glassman's description of light work accorded with the Commissioner's regulations. *See* 20 C.F.R. § 404.1567(b). Moreover, the Court notes that one of the jobs identified by the ALJ and the VE in Step Five was a sedentary job (document preparer), which would not involve the heavier lifting requirement.

In sum, upon review of the record, the Court concludes that the ALJ's decision is

13

supported by substantial evidence in the record as a whole.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 12th day of March, 2018.